## In re ALLIED OWNERS CORPORATION.

District Court, E. D. New York.

Nov. 8, 1935.

Goldwater & Flynn, of New York City (Monroe Goldwater, of New York City, of counsel), for trustees.

Archibald Palmer, of New York City, for intervening bondholders.

Delafield, Thorne & Marsh, of New York City, for City Bank & Farmers Trust Co.

Sullivan & Cromwell, Herman Shulman, and Schiff, Dorfman & Stein, all of New York City (W. C. Pierce, of New York City, of counsel), for first mortgage bondholders.

Newman & Bisco, of New York City (H. S. Morse, of New York City, of counsel), for Manufacturers Trust Co.

Salkin & Korn, of New York City (Charles Korn, of New York City, of counsel), for Thompson-Starrett Co.

Debevoise, Stevenson & Plimpton, of New York City (Francis T. Plimpton, of New York City, of counsel), for Reconstruction Finance Corporation.

Chadbourne, Hunt & Jaeckel & Brown, of New York City (W. T. Caldwell, of New York City, of counsel), for W. T. Taylor.

Powell & Ruch, of New York City (C. J. Ruch, of New York City, of counsel), for New York Investors, Inc.

Joseph J. Baker, of New York City, for a bidder.

Meyer Kraushaar, of New York City, for Sabath Congressional Committee.

Stephen Callaghan and Percival E. Jackson, both of New York City, for trustees.

INCH, District Judge.

This is a hearing, on an order to show cause, why an order should not be entered, in the above matter, approving a contract of sale made subject to the approval of the court. The contract is dated February 23, 1935, and is by and between the trustees and one Fabian.

The application for this approval is dated October 7, 1935, and came on to be heard October 18, 1935. Hearings were held thereunder on that day and on October 21, and 23d. During these hearings various counsel were heard and testimony was given by various witnesses, including the trustees and the proposed purchaser, Fabian.

There has been presented also two other proposed bids, which I will, for the sake of convenience, call the Baker bid and the Strasberg bid.

All of the above was duly transcribed and appears in the minutes of the hearings, and there seems no good reason for again setting forth in detail the various statements that have been made for and against the proposed sale. Suffice it to say, the real question was whether or not the Fabian offer to buy the Brooklyn Paramount Theatre should be approved. In my opinion, of the three proposed bids, the Fabian is the best. It also is my opinion, which I expressed at the close of the hearings, and which has been confirmed by my subsequent consideration of the testimony and briefs, that none of these offers is sufficiently attractive to justify a sale on the terms proposed.

Generally speaking, the theatre and office building cost to build, some years ago, approximately $5,900,000. The theatre seats 4,000 persons and is at present leased to the reorganized Paramount Company at a large rental and for, approximately, many years to come. The office building is large and is at present rented to responsible corporations, also at

a large rental, and also for many years to come. The gross receipts from this property for the year 1935 has been approximately $257,000, while the expense of operating was approximately $58,000. The taxes are approximately $135,000, leaving a net return of approximately $65,000.

This large obligation for taxes is due to the fact that the property is assessed at $4,800,000.

In substance, Mr. Fabian offers to purchase this property by paying $75,000, in cash, and a twenty-year purchase-money mortgage for $1,500,000, without the right to anticipate during this period, the collateral being all the income, etc., to be earned by the property, Fabian is to be employed as manager of the property for a period of approximately ten years at a salary of $7,500, a year. It thus appears that Mr. Fabian, if he purchases the property, will at the end of that period have received back his purchase price, so that all this amounts to is that a proposed general manager agrees to advance his proposed salary as the cash part of his bargain and all that remains is the said purchase-money mortgage and the loss of the title to the property.

█ The Baker and Strasberg bids are more or less along the same line except as to the employment of a general manager, and a somewhat larger purchase money mortgage. But each of these bidders propose to use the property, which they thus will buy, as a means for obtaining the $75,000, cash. The Strasberg bid proposes the entire amount to be obtained by means of a loan from one of the subsidiaries of the government, secured by a first mortgage on the property, while the Baker bid suggests that this mortgage be only $60,000, and the large sum of $15,000 is to be the sole amount risked by that purchaser.

These two bids are out of the question for several reasons, among them being that it makes the so-called purchase mortgage a second mortgage, and it is not impossible that, in case of default, the vendor may find that it is obligated to pay off a considerable portion of said first mortgage.

I cannot approve the Baker or the Strasberg bid.

█ Nor do I think that the Fabian bid is any better.

As I have said, the city has assessed this property at almost $5,000,000. To be sure it was extravagantly built at a cost of approximately $6,000,000, but the experts called seemed to agree on the value of the property now being approximately $1,000,000.

If this assessment is reduced to what it should be, say $2,000,000, or $2,500,000, the amount necessary to pay the taxes will be correspondingly reduced, and when one considers these outstanding leases by responsible parties for the years to come (approximately thirteen), together with such reduced expenditures for taxes, and the operating expenses, it seems to me that the trustees would not be justified in now accepting the Fabian bid or any other similar bid until an energetic effort has been made to have this unreasonable assessment materially reduced. So far as I can see, no such effort has as yet been made, although I understand that proceedings have been commenced.

There is one other reason for the proposed sale at this time which was indicated in the argument by those in favor of it. In accordance with their duty, the trustees have presented same for what it is worth. This is that the sale, at the present time, will necessarily result in a large loss, but that from other sources a large capital gain may possibly be considered to have been made in the reorganization. Whether any such gain exists has not been decided by the government, and it may well turn out not to have been a taxable gain, but if the contrary should prove to be correct, then an income tax may be due the government of approximately $500,000, payment of which will seriously deplete any redemption fund in connection with outstanding bonds. Therefore, it is said, that by setting off a loss arising from this necessary sale of this theatre any such gain or tax will be avoided. Thus it is urged that it is a good business to now accept the Fabian offer, upon the terms proposed, both because of its intrinsic value and the avoidance of any possibility of this income tax.

█ As to this, all I can say is that while it is the duty of a trustee to avoid, by all proper means, the payment of excessive taxes, if the effort is made to so avoid the tax by an improvident sale of property, the court cannot approve such sale.

In this, I am certain, the trustees who have handled this matter from the begin-

ning in a most industrious and skillful manner, with sole regard for the interest of the bondholders, will agree. 1 do not understand that they advanced this tax matter as a controlling reason, but simply as one of the reasons which must and should be considered by the court.

I have accordingly considered it and on the evidence before me do not consider it certain or important enough to practically turn this property over to a vendee on the terms proposed.

By a later brief, submitted after the close of the hearings (November 4th), the attorneys for the Reconstruction Finance Corporation state as follows: "We submit, however, that better bids should be obtainable." The attorneys for the First Mortgage Bondholders Protective Committee also indicate a somewhat similar disposition, although they feel that "some sale should be effected before December 31, 1935," on the theory of possibly avoiding such possible income tax.

My conclusion is that I do not approve of the Fabian or Baker or Strasberg bids, as submitted.

In my opinion, subject of course to the due presentation of some other bid which will meet with the approval of the trustees and the court, no attempt should be made to sell this property and part with the title until the said effort to reduce the taxes has been made and the result, whether successful or not, is known.

Accordingly, the motion is denied without prejudice.